IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CORD BUCKLEY CULLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 13-1323-KHV** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Cord Buckley Culley appeals the final decision of the Commissioner of Social Security to deny disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* For reasons set forth below, the Court affirms the judgment of the Commissioner.

### Procedural Background

On August 10, 2010, plaintiff filed his disability application with the Social Security Administration. See Transcript Of Administrative Record (Doc. #12) filed November 18, 2013 ("Tr.") at 125-33. He alleged a disability onset date of August 20, 2008. Plaintiff's benefit application was denied initially and on reconsideration. On March 28, 2012, an administrative law judge ("ALJ") concluded that plaintiff was not under a disability as defined in the Social Security Act and that he was not entitled to benefits. See id. at 10-22. On July 5, 2013, the Appeals Council denied plaintiff's request for review. See id. at 1-3. The decision of the ALJ stands as the final decision of the Commissioner. See 42 U.S.C. § 405(g). Plaintiff appealed the final decision of the Commissioner to this Court.

### Factual Background

The following is a brief summary of the evidence presented to the ALJ.

Plaintiff is 40 years old. He holds an associate's degree and has worked as a heating and cooling technician. Tr. 34, 194. Plaintiff initially alleged that he was disabled due to a bad back, high blood pressure and obesity. Tr. 182. At the hearing before the ALJ, plaintiff testified that primarily he cannot work because of chronic pain (low back pain and nerve pain that moves into the hips and down both legs). Tr. 35. Plaintiff also claims that he is restricted from working because of obesity, sleep apnea and depression.

Plaintiff has not worked since August 20, 2008, when he injured his back at work while moving a dolly loaded with equipment. Tr. 353. An MRI revealed a moderate sized disc extrusion at L5-S1 with mass effect upon the thecal sac and some abutting nerve roots, and mild disc bulge at L4-L5 without sequela. Tr. 340. From August of 2008 through February of 2010, plaintiff sought medical treatment for back pain with some success. As of February 26, 2010, plaintiff was looking for a job without any heavy duty tasks. Tr. 408. On April 5, 2010, after a discharge from physical therapy, plaintiff reported that he was doing well and did not need pain medication. Tr. 422. At the hearing before the ALJ, plaintiff confirmed that by April of 2010, he was doing well and not taking pain medications. Tr. 36.

Plaintiff did not seek treatment between April 5 and December 9, 2010. On December 9, 2010, Sushmita Veloor, M.D., evaluated plaintiff.[1] Dr. Veloor noted that plaintiff's last prescription for pain medication was in December of 2009, but that he had returned because of a "flare up" of back pain about three to four weeks earlier (in November of 2010). Tr. 503. Plaintiff reported that he was not sure what had caused the flare up. Id. On February 17, 2011, Dr. Veloor re-evaluated

---

[1] Dr. Veloor practices at Midwest Rehabilitation, P.A. in Topeka, Kansas and began treating plaintiff for back pain in 2008.

-2-

plaintiff. She noted that he had started an exercise program about three weeks earlier and that his range of motion was better, but that his pain was not better. Tr. 502. Dr. Veloor noted that plaintiff was "still trying to find a job." Id.

On March 29, 2011, plaintiff sought therapy for depression at Bert Nash CMHRC, Inc. Tr. 530. On April 6, 2011, Loraine Herndon, LSCSW, rated plaintiff's global assessment of functioning ("GAF") at 48, which indicated that plaintiff had "serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."[2] See Tr. 535; DSM-IV-TR at 34. Plaintiff attended weekly therapy sessions through at least July of 2011. On July 12, 2011, Herndon diagnosed major depressive disorder, recurrent, moderate. Tr. 526. After several weekly therapy sessions, Herndon rated plaintiff's GAF at 61, which indicated some mild symptoms but that he was generally functioning pretty well. See DSM-IV-TR at 32.

By May and June of 2011, plaintiff had sought treatment for back pain including radiating pain going down his legs. Tr. 586, 588. Plaintiff received epidermal injections with limited relief. Dr. Veloor recommended that plaintiff consult a neurosurgeon. Tr. 588. In September and October of 2011, plaintiff decided that he would first pursue lap band surgery for his weight. Tr. 615, 616.

On September 29, 2011, Michael Lange, M.D., evaluated plaintiff. Dr. Lange noted that plaintiff's functioning was improved and that he was tolerating his medicine without side effects. Tr. 618.

At the ALJ hearing on December 13, 2011, plaintiff testified that he had fallen around six

---

[2] The GAF is a subjective determination of "the clinician's judgment of the individual's overall level of functioning," based on a scale of one (low) to 100 (high). Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (4th ed. 2000 text revision) ("DSM-IV-TR") at 30. The scale does not evaluate impairments caused by physical or environmental factors. See id.

to eight months earlier, and that he had had continued pain since that point. Tr. 36. Plaintiff also testified that he had side effects of medications including dizziness and blurred vision. Tr. 35, 44-45.

Dr. Veloor opined that plaintiff is limited to less than sedentary exertional level work, including limitations of standing/walking for two hours in an eight-hour day and sitting for three hours in an eight-hour day. Tr. 591. Dr. Veloor also opined that plaintiff has a number of nonexertional limitations including that he must avoid even moderate exposure to extreme cold, extreme heat, weather and wetness/humidity. Tr. 592. Dr. Veloor concluded that plaintiff is unable to "return to any gainful employment with his current limitations." Tr. 597.

The ALJ gave minimal weight to Dr. Veloor's opinions. Tr. 18. The ALJ noted as follows:

> Although Dr. Veloor has examined the claimant on several occasions, her opinions are not supported by the objective evidence. As discussed, results upon physical examination were often relatively benign. Moreover, objective results upon diagnostic imaging included qualifying terms such as "mild" or "minimal." In addition, the claimant's reported activities are not consistent with Dr. Veloor's assessments. In fact, as noted, at one examination the claimant told Dr. Veloor that he was looking for work, which is obviously inconsistent with Dr. Veloor's opinion that the claimant is unable to work.
>
> I note that many of Dr. Veloor's restrictions have little or no objective basis, or, it is at least unclear why she assessed some of these limitations. For instance, it is not clear what impairments or symptom would require the claimant to avoid cold, heat, weather, or wetness/humidity and Dr. Veloor does not provide any explanations as to why the claimant is so limited. Finally, Dr. Veloor's opinion that the claimant is unable to return to gainful employment with these limitations is outside the scope of her expertise; she is not a vocational expert and did not examine the claimant as such. Further, such an opinion is tantamount to an opinion that the claimant is "disabled," which is an opinion on an issue reserved to the Agency. Thus, I give minimal weight to Dr. Veloor's opinions.

Tr. 18-19.

Dr. Kevin Hughes, M.D., plaintiff's primary care physician, opined that plaintiff is limited

to less than sedentary exertional level work, including standing/walking for one hour in an eight-hour workday and sitting for two hours in an eight-hour workday. Tr. 594. Dr. Hughes also opined that plaintiff would need to avoid even moderate exposure to extreme cold, extreme heat, weather, and wetness/humidity. Tr. 595. Dr. Hughes concluded that these limitations would substantially limit plaintiff's ability to do any meaningful work. Tr. 599.

The ALJ gave little weight to Dr. Hughes's opinions. Tr. 19. The ALJ noted as follows:

I give little weight to Dr. Hughes's opinions for the same reasons that Dr. Veloor's opinions are given little weight. In fact, the record indicates that Dr. Hughes's treatment notes are even more inconsistent with his opinions than are Dr. Veloor's. For instance, as noted, during a January 2009 examination with Dr. Hughes, the claimant was observed to be only "slightly uncomfortable with movements due to [back pain]" and the claimant was observed to have a normal gait (Exhibit 4F, p. 10). At a June 2011 examination with Dr. Hughes, it was noted that the claimant's pain was "overall probably better than it has been in quite a while" (Exhibit 19F, p. 11). At another of Dr. Hughes's examinations in November of 2011, Dr. Hughes indicated that the claimant's pain control was satisfactory on his medication regimen (Exhibit 30F, p. 2). Dr. Hughes's opinion reports do not reflect these previous observations. Also, as with Dr. Veloor's opinions, many of Dr. Hughes's opinions, particularly his opinions regarding environmental limitations, are without adequate basis and Dr. Hughes's reports do not explain why the claimant has these limitations. Accordingly, I give minimal weight to Dr. Hughes's opinions.

Tr. 19.

In his order of March 18, 2012, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The claimant has not been shown to have engaged in substantial gainful activity since August 20, 2008, the alleged onset date (20 CFR 404.1571 *et seq.)*.

3. The claimant has the following severe impairments: degenerative disc disease, obesity, obstructive sleep apnea, and depression (20 CFR 404.120(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

-5-

> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a). The claimant must be allowed to alternate between sitting and standing up to every 30 minutes. He can never climb ramps, stairs, ropes, ladders, or scaffolds. He can occasionally kneel or stoop, but can never crouch or crawl. The claimant must avoid concentrated exposure to excessive vibration, hazardous machinery, and unprotected heights. In addition, he is limited to occupations that require the performance of unskilled work only.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on October 11, 1974 and was 33 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from August 20, 2008, through the date of this decision (20 CFR 404.1520(g)).

Tr. at 12-21.

## Standard Of Review

The ALJ decision is binding on the Court if supported by substantial evidence. See 42 U.S.C. § 405(g); Dixon v. Heckler, 811 F.2d 506, 508 (10th Cir. 1987). The Court must determine whether the record contains substantial evidence to support the decision and whether the ALJ applied the proper legal standards. See Castellano v. Sec'y of HHS, 26 F.3d 1027, 1028 (10th Cir. 1994). While "more than a mere scintilla," substantial evidence is only "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  Evidence is not substantial "if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion."  Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (citation omitted).

## **Analysis**

Plaintiff bears the burden of proving disability under the Social Security Act.  See Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).   The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity for at least 12 months due to a medically determinable impairment.  See 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is under a disability, the Commissioner applies a five-step sequential evaluation: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents the claimant from continuing his past relevant work; and (5) whether the impairment prevents the claimant from doing any kind of work.  See 20 C.F.R. §§ 404.1520, 416.920.  If a claimant satisfies steps one, two and three, he will automatically be found disabled; if a claimant satisfies steps one and two, but not three, he must satisfy step four.  If step four is satisfied, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy.  See Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).

Here, the ALJ denied benefits at step five, finding that plaintiff is capable of performing work in the national economy.  Plaintiff argues that (1) the ALJ improperly discounted the opinions

of Drs. Veloor and Hughes, and (2) the ALJ did not provide a narrative to support the residual functional capacity ("RFC") assessment.

**I.     Evaluation Of Treating Physician Opinions**

Plaintiff argues that the ALJ improperly gave minimal weight to the treating source opinions of Drs. Veloor and Hughes. Plaintiff's Social Security Brief (Doc. #14) at 11. A treating physician's opinion carries controlling weight only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. § 404.1527(d)(2); Soc. Sec. Ruling (SSR) 96-2p, 1996 WL 374188, at *2 (July 2, 1996). The opinion also is not entitled to controlling weight if it is brief, conclusory and unsupported by medical evidence. Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987).

Even if the ALJ does not give controlling weight to a treating physician's opinion, he must still give the opinion deference and weigh it using all of the factors set forth in the regulations. Watkins, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *4). In particular, the ALJ must consider the following factors: (1) the length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Watkins, 350 F.3d at 1301; 20 C.F.R. §§ 404.1527(d) (2–6), 416.927(d) (2–6); see Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001). After considering the factors, the ALJ must give reasons for the weight

he gives the treating source opinion. Watkins, 350 F.3d at 1301. If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so. Id.

Plaintiff first argues that the ALJ incorrectly found that objective evidence did not support the opinions of Drs. Veloor and Hughes. Plaintiff maintains that the ALJ ignored objective evidence that beginning in December of 2010, his condition took a "turn for the worse." Plaintiff's Social Security Brief (Doc. #14) at 16. Plaintiff asserts that his claim essentially involves two "relevant time periods:" (1) from the date of his injury on August 20, 2008 to December 9, 2010 and (2) from December 9, 2010 through the date of the ALJ decision on March 28, 2012. Plaintiff concedes that the ALJ assessment of the treating source opinions "would be valid" if his claim was limited to the first period. See id. at 13; see also plaintiff's testimony, Tr. 36 (acknowledging that in April of 2010, he was "doing good" and not taking pain medications).

Plaintiff apparently did not propose an alternative onset date during the administrative proceeding and he has not specifically explained how the ALJ could have reasonably determined such a date based on the administrative record. At the hearing, plaintiff testified that his pain increased and "stuck around" since he fell approximately six to eight months earlier, which corresponds to April, May or June of 2011. Tr. 36. After the ALJ questioned plaintiff about the precise date of the fall, he said it would have been "last wintertime," but that he did not know the exact month.[3] Id. In the memoranda filed in this Court, plaintiff does not refer to a "fall" and

---

[3] When plaintiff's attorney asked him when the pain got to a point where he felt that he could not work at all, plaintiff stated as follows:

Once the leg pain started with it, and down into the feet, that was kind of a, a new deal *after this last episode, after the fall*. I had a lot more leg pain and the back pain just increasingly got worse. And then after we started adding in those heavy pain

(continued...)

-9-

suggests that on December 9, 2010, plaintiff returned to Dr. Veloor with a "recurrence of back pain." Plaintiff's Social Security Brief (Doc. #14) at 14. Dr. Veloor's treatment notes from that visit reflect that his pain increased about three to four weeks earlier, in November of 2010, and that he was not sure what caused the flare up. Tr. 503. The Court can find no medical notations of a fall in or around November of 2010.[4] Substantial evidence supports the ALJ decision to give the opinions of Drs. Veloor and Hughes little weight because of the objective medical evidence throughout the alleged disability period. The ALJ did not limit his discussion of objective evidence to records before December of 2010. For example, the ALJ noted that imaging reports showed fairly benign results with multiple qualifying phrases such as "very minimal," or "mild," or "moderate." Tr. 17-18 (citing MRI report from March 10, 2011). The ALJ also noted that medical reports of Dr. Hughes, including ones from June and November of 2011, did not support his opinion. Tr. 19.

---

[3](...continued)
medications, there was just – there's no way you can go out and climb ladders and get on rooftops and work high voltage type of scenarios with, with these kind of pain meds.

Tr. 48 (emphasis added).

[4] Beside plaintiff's initial injury in August of 2008, medical records reflect that plaintiff fell only once in November of 2009, some one year before the alleged exacerbation of symptoms in December of 2010. Tr. 443 (started having problems again approximately one month earlier in November of 2009, when he slipped and fell). While the ALJ is permitted to consider a later onset date than the one asserted in plaintiff's disability application, see 20 C.F.R. § 404.620(a), he need not set forth a factual basis for each potential sub-period to support his conclusion that plaintiff is not disabled. In light of plaintiff's testimony, the ALJ could have considered a period of time before and after his fall, but plaintiff could not recall specifically when he fell and the medical records did not support his testimony of a fall during the "wintertime" (December of 2010 through March of 2011). Cf. Bush v. Colvin, No. 13-5531-MLC, 2014 WL 3778308, at *8 (D.N.J. July 31, 2014) (remand so ALJ could state basis for conclusions for time periods before and after claimant had stroke). Accordingly, the ALJ was not required to search for a potential onset date when he had already determined that plaintiff was not disabled for the entire period.

Finally, the medical records from Drs. Veloor and Hughes of their most recent examinations of plaintiff in November of 2011 did not reflect disabling pain.[5]

Plaintiff next argues that the ALJ gave too much weight to his statement to Dr. Veloor that he was looking for work, Specifically, plaintiff notes that he made the statement on February 26, 2010, which was during the "first relevant time period." Plaintiff's Social Security Brief (Doc. #14) at 15. Plaintiff acknowledges that if the records ended there, "the ALJ's point would be valid." Id. Plaintiff maintains that his statement in February of 2010 does not discredit his claim that his condition significantly worsened in December of 2010. The ALJ noted, however, that on February 17, 2011, plaintiff told Dr. Veloor that he is "still trying to find a job." Tr. 17, 19, 502. The ALJ could properly rely on plaintiff's statements in February of 2010 and 2011 in weighing the opinions of Drs. Veloor and Hughes.

Finally, plaintiff argues that the ALJ improperly discounted the treating physician opinions because it was unclear why they assessed some limitations such as those related to avoiding cold, heat, weather or wetness/humidity. Plaintiff's Social Security Brief (Doc. #14) at 15. Plaintiff refers to Dr. Veloor's letter dated October 17, 2011 which notes plaintiff's history of back pain, but plaintiff does not explain how Drs. Veloor or Hughes concluded that he should avoid even moderate exposure to extreme cold, extreme heat, weather and wetness/humidity. Tr. 19.

In sum, substantial evidence supports the ALJ decision to give minimal weight to the treating

---

[5] On November 11, 2011, Dr. Hughes recommended a sleep study and noted that plaintiff was continuing efforts to prepare for bariatric surgery, but that he was "generally doing okay otherwise" and that his pain control was "fairly satisfactory on current regimen" Tr. 662. Similarly, Dr. Veloor's treatment notes on November 15, 2011 reflect that plaintiff's current medications were "controlling pain around 5/10," that he was "sleeping much better," that he was getting adequate relief from the medications and tolerating them without any adverse events. Tr. 614.

source opinions of Drs. Veloor and Hughes.

## II. Narrative Statement To Support Residual Functional Capacity

Plaintiff argues that the ALJ did not provide a sufficient narrative statement to support the limitation that plaintiff needed to alternate positions every 30 minutes. Plaintiff's Social Security Brief (Doc. #14) at 18. The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The RFC must not be expressed solely in terms of the exertional categories of sedentary, light, medium, heavy and very heavy work. Id. at *3. Instead, the ALJ must first identify the individual's functional limitations or restrictions and assess the individual's work-related abilities on a function-by-function basis. Id. at *1. In particular, the ALJ must assess the "physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)." 20 C.F.R. § 404.1545(b); see SSR 96-8p, 1996 WL 374184, at *1. In addition, the ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of each work-related activity the individual can perform based on the record evidence. Id. at *7. The ALJ must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. Id. Specifically, where pain is alleged, the ALJ must "[s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work. The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id.

Plaintiff argues that the ALJ did not specifically explain why he rejected plaintiff's testimony that he would need to alternate between standing and sitting every 15 minutes. Id. The ALJ specifically explained why he found that plaintiff's statements of his limitations were only partially credible. Tr. 17-18; see infra text, Analysis, Part III. In addition, plaintiff ignores the fact that Dr. Veloor opined in September of 2011 that he could sit, stand and/or walk continuously without a break for 30 minutes. Tr. 591. In light of his determination of plaintiff's credibility and Dr. Veloor's statement, substantial evidence supports the ALJ conclusion that plaintiff's RFC included a need to alternate positions every 30 minutes.

### III.     Evaluation Of Plaintiff's Credibility

In his initial brief, plaintiff did not directly challenge the ALJ determination that his testimony about his limitations was only partially credible. In his reply, he argues that the ALJ erred in this regard. See Plaintiff's Social Security Reply Brief (Doc. #20) at 1-3. Because the ALJ rejected part of plaintiff's testimony in determining his RFC, the Court addresses the ALJ credibility determination.

In reviewing ALJ credibility determinations, the Court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." Casias v. Sec'y of HHS, 933 F.2d 799, 801 (10th Cir. 1991). Credibility is the province of the ALJ. Hamilton v. Sec'y of HHS, 961 F.2d 1495, 1499 (10th Cir. 1992). At the same time, the ALJ must explain why specific evidence relevant to each factor supports a conclusion that a claimant's subjective complaints are not credible. See Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir.

1988) (footnote omitted)). So long as he sets forth the specific evidence on which he relies in evaluating claimant's credibility, the ALJ is not required to conduct a formalistic factor-by-factor recitation of the evidence. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2001); see Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). In making a finding about credibility, the ALJ need not totally accept or totally reject the individual's statements. See SSR 96-7p, 61 Fed. Reg. 34483, 34486 (July 2, 1996). Rather, the ALJ "may find all, only some, or none of an individual's allegations to be credible." See id.

The Tenth Circuit has set forth the proper framework for analyzing evidence of disabling pain or mental limitation-producing impairments. The relevant factors are (1) whether claimant proves with objective medical evidence an impairment that causes pain; (2) whether a loose nexus exists between the impairment and the subjective complaints of pain; and (3) whether the pain is disabling based upon all objective and subjective evidence. See Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987). In the final step, the ALJ should consider the following factors:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Huston, 838 F.2d at 1132.

Here, the ALJ found that plaintiff's impairments limited him to less than the full range of sedentary work. Tr. 14. In particular, he concluded that plaintiff must be allowed to alternate between sitting and standing up to every 30 minutes; he can never climb ramps, stairs, ropes, ladders or scaffolds; he can occasionally kneel or stoop, but can never crouch or crawl; he must avoid

concentrated exposure to excessive vibration, hazardous machinery and unprotected heights; and he is limited to unskilled work. Id. The ALJ rejected plaintiff's testimony that his limitations preclude all work. The ALJ found that plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not fully credible. Tr. 16. In particular, the ALJ rejected plaintiff's testimony that he is unable to work because (1) objective medical evidence and his statements to medical providers did not support, and were inconsistent, with his complaints, (2) his daily activities were inconsistent with disabling pain and (3) he did not seek mental health treatment until almost three years after his alleged disability began. Tr. 15-18.

### A.     Consistency Of Plaintiff's Complaints With Objective Medical Evidence

The ALJ rejected plaintiff's subjective complaints in part because the objective medical evidence of record did not support them. See Luna, 834 F.2d at 165-66 (lack of objective medical evidence to support degree of pain alleged important factor to consider in evaluating claim of disabling pain); Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990) (medical records must be consistent with nonmedical testimony as to severity of pain). The ALJ observed that plaintiff's physical exams were often fairly benign. Tr. 15. The ALJ provided several examples including an MRI exam from March of 2011 which revealed a "moderate sized central to left paracentral disc protrusion at L5-S1" and a "mild disc bulge . . . at the L4-L5 level." See Tr. 15, 513; see also Tr. 15-16, 380, 407, 585-86. The ALJ reasonably concluded that the exam findings were not consistent with the degree of limitation that plaintiff alleged.

The ALJ also discounted plaintiff's testimony based upon inconsistencies with his statements to medical providers. See Kelley v. Chater, 62 F.3d 335, 338 (10th Cir. 1995) (upholding ALJ finding that claimant testimony that he needed two-hour nap each day was not credible because

claimant failed to report restriction to physician); SSR 96-7p, 61 Fed. Reg. at 34486 (consistency of individual's statements, especially complaints made to treating or examining medical sources, strong indication of credibility). The ALJ noted some discrepancy between plaintiff's assertion of constant pain and reports to medical providers on several occasions where he specifically denied radiating back pain, reported that he was only "slightly uncomfortable" due to back pain, said that he was "doing well" and did not require pain medications, and claimed that his pain control was "fairly satisfactory" with current medications. Tr. 16. The ALJ also noted that plaintiff's testimony that his medications caused a lot of "weird side effects" (including dizziness and blurred vision) was inconsistent with his statements to medical providers. Tr. 17-18. In particular, the ALJ noted that in September of 2011, Dr. Veloor stated that plaintiff was "getting adequate relief from the medications and [was] tolerating them without any adverse events." Tr. 18. In light of plaintiff's inability to explain the inconsistency between his statements and the medical records, the ALJ credibility analysis properly relied on this fact.[6] Finally, the ALJ noted plaintiff's statement to Dr. Veloor in February of 2011 that he was "still trying to find a job" – a statement which was inconsistent with allegations that plaintiff was unable to work due to disability. Tr. 17.[7]

Substantial evidence therefore supports the ALJ conclusion that the objective evidence does

---

[6] When the ALJ asked plaintiff about Dr. Veloor's statement, plaintiff stated "I can't remember Dr. [Veloor] ever asking me about the side effects . . . of those medications, but there's, there's all kinds of drowsiness, dizziness, dry mouth, you lose your balance on them, you get up and – confusion once in a while." Tr. 42-43. When the ALJ asked plaintiff about a statement by Dr. Lange on September 29, 2011 that plaintiff is tolerating his medicine without side effects, plaintiff stated that "I told them all that – about the, the side effects. I don't know why they're saying no side effects at all. It makes absolutely no sense to me." Tr. 43.

[7] Likewise, in February of 2010, plaintiff told Dr. Veloor that he was "trying to find a job, but is trying to avoid any heavy duty type of work." Tr. 408.

-16-

not fully support plaintiff's subjective complaints.

### B. Plaintiff's Daily Activities

In part, the ALJ rejected plaintiff's complaints of disabling pain because they were inconsistent with his daily activities. Tr. 17. The ALJ noted that plaintiff reported that he takes care of pets, visits the gym every other day, prepares simple meals and shops for groceries. Id. The ALJ also noted that plaintiff reported that he regularly goes to the library and Wal-Mart. Id. Plaintiff argues that in her response brief, the Commissioner did not cite a single activity that is inconsistent with disabling pain. Plaintiff does not deny, however, that he performs the daily activities which the ALJ noted. Substantial evidence supports the ALJ conclusion that plaintiff's daily activities are inconsistent with complaints of disabling pain. See Bean v. Chater, 77 F.3d 1210, 1213 (10th Cir. 1995) (activities of cooking, dusting, doing laundry, grocery shopping and driving inconsistent with claim of disability).

### C. Minimal Treatment For Depression

The ALJ rejected plaintiff's claim of disability based on depression because plaintiff did not seek mental health treatment until March of 2011, some 31 months after the alleged onset date of disability. Tr. 16. In evaluating plaintiff's credibility, the ALJ can properly consider the extensiveness of medical or nonmedical attempts to obtain relief and the frequency of medical contacts. See Huston, 838 F.2d at 1132. Even after plaintiff began mental health treatment, his treatment records do not document disabling symptoms and plaintiff gave inconsistent statements about his condition. Tr. 17. For example, the ALJ noted that on November 15, 2011, Dr. Veloor noted that plaintiff's mood had been good and he denied any depression. Tr. 16. The ALJ also noted that medical records reflected that medication helped improve plaintiff's mood. Id.

### D. Overall Evaluation Of Credibility Factors

For reasons stated above, substantial evidence supports the ALJ decision to reject in part plaintiff's testimony about the limitations created by his impairments. Although the ALJ could have discussed the evidence in greater detail, the record need only demonstrate that he considered all of the evidence; an ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citing Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); White, 287 F.3d at 905; see Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (court cannot displace agency choice between two fairly conflicting views where both are supported by substantial evidence). While some evidence supports the conclusion that plaintiff's condition was worsening shortly before the ALJ hearing, substantial evidence supports the ALJ conclusion that plaintiff was not disabled through the date of his decision on March 28, 2012.

**IT IS THEREFORE ORDERED** that the Judgment of the Commissioner is **AFFIRMED.**

Dated this 26th day of March, 2015 at Kansas City, Kansas.

s/ Kathryn H. Vratil<br>
KATHRYN H. VRATIL<br>
United States District Judge